Case number 18-3076, Ramon Jasso Arangure, argument not to exceed 15 minutes per side. Mr. Sanchez, supervising attorney, to be argued by law student Paul Denick and rebuttaled by law student Zachary Fulfield. Thank you. Your honors, I'm Benjamin Casper Sanchez. I'm for the petitioner. I'm a counsel of record. And pursuant to your student practice rules, I'm here to introduce the student argument today. Paul Denick will be presenting our opening argument. We're going to reserve five minutes. And Zach Fulfield will be providing the rebuttal argument. I also want to recognize Kayla Holt for her participation in this case. I thank the court for allowing the student's participation. I want to also thank Respondents Council, in this part, for a gracious agreement to their participation. And we are at home here in the law school. I want to echo your thanks to the law school as well. Thank you. Thank you very much. Is there Professor Sanchez, or is this the supervising attorney? I'm Professor Casper Sanchez, but I don't let them call me that. OK. Well, thank you very much for doing it. Thank you. May I please leave the court. This court should reverse, as the Supreme Court has long held, that common law inclusion rules, including res judicata, apply to final agency adjudications. And this court, like others, has confirmed that reclusion rules do indeed apply in the immigration context, where Congress has structured agency proceedings to be judicial in character, and the removal proceedings that issue here are quintessentially judicial. Then res judicata applies full force to ensure the finality and the basic legitimacy of the agency's claims, adjudication of claims under those rules. The board now asks you to reject all of this. The statutory rules and procedures Congress created to govern immigration removal proceedings, like these, have had the same basic format and same judicial nature since 1952. What about Johnson v. Whitehead and Judge Wilkinson's decision, where he tried, he separated for himself the common law presumption that you're advocating for as being related to judicial rules, and that this was agency rules involving agency courts? And like, for example, they set their own rules of evidence. Why would this just be another rule entitled Vermont Yankee deference? Your Honor, Vermont Yankee is inapplicable here, because this is a common law doctrine, not a procedural rule. And it's not something that this court would be imposing upon the immigration judge or the BIA. It's something that the board is trying to strip away. The fundamental presumption is that when Congress creates judicial proceedings like these, res judicata applies full force. And I don't disagree with that, but I think the way Judge Wilkinson approached it, and you can correct me if I'm wrong, is what he said is, look, we've got this common law presumption. That applies when you're talking about the judiciary. But when you're talking about agencies, through the APA and elsewhere, Congress has set up a specific mechanism by which the agency can make their procedures and rules and everything else. This falls in that. And since they didn't affirmatively do it in the statute, it's up to the agency's discretion. And that decision, because of the arguable ambiguity, is entitled to Chevron deference. Why is he wrong? That's incorrect, Your Honor, because as Astoria lays out, in cases of congressional silence where Congress hasn't explicitly addressed whether res judicata applies, that's when res judicata does apply. The fundamental presumption kicks in in that case. And the language in Astoria is, Astoria involved a state right and whether there was a cost in it, not necessarily per se agency rules. That's correct that it was a state administrative agency in that case. But the language in Astoria also says it applies whether it's a state agency adjudicating the issue or a federal agency. And again, it's the default if it's not explicitly addressed. And Congress typically won't explicitly address whether res judicata applies when they create these procedural rules. Because it's baked in when they create these judicial proceedings, is that res judicata does apply. Why isn't the agency right that silence is ambiguity, and ambiguity means they get deference and they get to make the call? The Chevron doesn't apply here, Your Honor, because, again, because of this fundamental presumption. It's presumed that res judicata applies. And it's not something that the court, given that fundamental presumption, has left up to the agency to decide in the first place. So there's nothing, there's no statutory gap left for the agency to fill. And even if for argument's sake, Chevron did apply here, the board's reasoning would still have to be rejected because it's unreasonable and unreasoned. For example, they look to interests of the government in removing non-citizens with criminal convictions, but the decision is void of any analysis of the interests of lawful permanent residents like Mr. Yasso. And when Congress created these judicial proceedings to determine removability, they did that to create a balanced process, given the important rights at stake for both sides, the government and the non-citizen.  It's something that just demonstrates the unreasoned nature of the board's decision. Counsel, let's assume res judicata does apply in this type of proceeding. The problem here, though, it seems, is that the earlier adjudication has language in it that suggests it might be without prejudice, so you don't have a final judgment in the earlier proceeding. How do you deal with that here? Is that something we can address, or do we have to remand it back to the... I noticed, like, the split note three in the decision of December 29, that the immigration judge just assumes our window that the termination order was with prejudice. That doesn't look that way to me, necessarily, but do we decide that, or do we have to send it back to let the immigration judge decide that? That's something that you can decide. Why can't he decide? Because it's a matter of law here. So, the footnote three that you're referring to is the board's decision, which says that they're assuming our new window that the immigration judge terminated that first proceeding with prejudice, and it has to be that way as a matter of law for three main reasons. First, the statute governing judicial removal proceedings like these at 8 U.S.C. section 1229A, C1A, states that at the conclusion of a proceeding, the immigration judge shall decide whether the alien is removable. And that decision is with prejudice, and we know that, because if you look... But what if the judge says, as he did here, it's without prejudice and you should be ready because they'll bring a new proceeding? Is that... Why does that trump it? It seems to me the Supreme Court said in Sentech that without prejudice means no race due to time. The difference is that what the judge said in that transcript of the removal proceeding is not correct as a matter of law. And in the written decision... Why can an immigration judge not dismiss a case without prejudice? He's got to be able to. An immigration judge can dismiss a case without prejudice, but only pursuant to statutory or regulatory authority. And if you look at 8 CFR 1239.2, there's limited circumstances in which an immigration judge can dismiss without prejudice. And in each of those circumstances, an affirmative motion from the government is required in order for that to happen. The government didn't make a motion here, and Mr Yassa would have had the right to contest that motion as well. And so there's no inherent authority for an immigration judge to terminate, as he said, without prejudice. He has to be acting pursuant to the law. But does that automatically make it with prejudice? Because that could be... Couldn't that be awful for immigrants in the long run if every time... Let's say they terminate something without prejudice because the immigrant did provide certain documentation and they want to give the immigrant the opportunity. Do they have to follow a very specific procedure? And if they don't, do we always assume it's with prejudice? And thus, the immigrant didn't submit sufficient paperwork so they lose and they get deported? No, Your Honour. So, I think there would be certain circumstances just as a matter of fundamental fairness when termination without or dismissal without prejudice could be allowed. But now you're asking for one thing to run one way. Why wouldn't this be fundamentally fair? He says to the government, look, you thought this, the Sixth Circuit thought differently, but you've got this other, bring it if you want. The reason it would not be fundamentally fair here, Your Honour, is because of all the regulatory and statutory options the government had to litigate this additional charge of removability throughout the entire first proceeding. So, they have ATFR 1003. But you got it slammed up until Chudy didn't come out until after the appeal in this case, right, to the BIA. It was pending for appeal, yeah, when Chudy was issued. So, they have what they thought was a slam dunk. They pursue it. They save resources. Then Chudy comes out. He gets remanded. The immigration judge says, I'm getting rid of it. It makes sense that they would then have a second opportunity to bring it under another clause. I think focusing solely on Chudy ignores the larger development of this case. So, we have the Supreme Court deciding Johnson three months before Mr. Yasso even appeared in the immigration court for the first time. Johnson didn't apply to immigration cases and a lot of courts weren't applying it. Right. But again, Your Honor, then you have DiMaia coming down and then you have a specific remand from the board in Mr. Yasso's case in March saying you need to reconsider here in light of Johnson. So, questioning and pointing out that the government's sole charge of removability was on thin ice at that point. And despite all these warnings and even specific notices, the government just continued to sit on its hands. And again, it's the procedural options that are available to the government throughout the proceedings. I see I'm about to run out of time if I may briefly conclude. You may, but I have one other question before you conclude. What's your best case for the proposition that when an immigration judge says, it's without prejudice, that's not, that is a final decision on the merits? The best case, Your Honor, is a decision of the Attorney General from 2018, matter of SOG, which lays out that other than... Matter of SOG. Matter of SOG and FDB. And it lays out that only, the immigration judge only has authority to terminate and dismiss proceedings without prejudice pursuant to those regulations and the statute. Do you have a site for that? I can provide one. I don't have the site off the top of my head, but it's a matter of SOG. Okay, thank you. Do you want to conclude or I interrupt? Oh, the final point I was going to make is just that the government had, pursuant to ACFR 1003.30, the opportunity to raise this additional charge at any time throughout proceedings. And this charge was available throughout proceedings. But even after the immigration judge terminated proceedings, they could have appealed the decision to the board and requested with a motion for remand to add the additional charge. And they could have filed for reconsideration. So there were all these recognized procedural options for the government to accomplish  Thank you, counsel. Thank you, Your Honor. May it please the court. Song Park for the Attorney General. As a result of Mr. Yasu's 2015 conviction for a felony first-degree home evasion, there is no question that he is a removable alien or a removable non-citizen convicted of an aggravated felony burglary offense  Mr. Yasu nevertheless contests his remand and pleads guilty to the charge of contending that despite his status as an aggravated, removable, criminal non-citizen, the agency is barred from doing so based on the doctrine of race judicata. Because the board properly concluded in line with the holdings of the Supreme Court as well as this circuit that applying plain preclusion to petitioner's case here would frustrate the clear intent of Congress that the removal of a convicted aggravated felony offender is of the kind Would you agree that the common law presumption applies  As a general rule, yes, Your Honor. So why, if in a story in B&B Hardware the Supreme Court said there's this common law presumption of race judicata and Congress legislates against the backdrop against that, plus they clearly and explicitly say otherwise, courts should presume that race judicata applies. Why wouldn't it apply here? Actually, Astoria, Your Honor, stood for the proposition that, yes, as a general rule these preclusive doctrines may apply or be presumed to apply but nevertheless, where there is an express intent by Congress of overriding the need to apply race judicata Astoria involved exhaustion and so what happened in Astoria is they said, if we allow exhaustion to be claimed preclusive with us if we allow what happens in the state we're never going to have a federal cause of action. That's a little different than here where all they're saying is, look, like in B&B the agencies are bound by these preclusions unless Congress clearly and explicitly says otherwise I'm sorry, Your Honor. Astoria actually did not say that Congress had to explicitly and clearly indicate that these preclusive doctrines would not apply for them to be accepted B&B does, right? Justice Alito says it in B&B Hardware But in Astoria, though in which the court specifically recognizes there's a general presumption of these preclusive documents applying to administrative proceedings but it went on to say specifically, one that where it's applied in an administrative context as opposed to a judicial context that there has to be some flexibility because there's this acknowledgment that there are attendant or different concerns But where is there any statement from Congress here? I mean, I don't see anything where they're saying that race judicata shouldn't apply in these contexts Congress may not explicitly say race judicata should or should not apply in those express words and again, Astoria says there doesn't need to be any magic words that Congress uses So in 1986, Congress did a very big overhaul of the Immigration Statute and during the course of doing that it expressly and specifically enacted several provisions which recognized its intent and its interest in expeditiously removing non-citizens convicted of criminal offenses and specifically with respect to those who have been convicted of aggravated felony offenses So it went to the extraordinary measure, in fact of including language that indicated these aggravated felony offense definitions that were placed into 101-843 were actually allowed to be applied retroactively So in other words, perhaps in 1980 you committed a crime that was not considered So they wanted to deprove dangerous people Correct to overcome the presumption that we should have race judicata I mean, what other rules would we throw out if that were their intent? Like entry rules? Isn't that proof too much? Well, your honor, with respect this court as well as many of the sister courts have specifically recognized that that express provision enacted in 1996 by Congress with respect to aggravated felonies is a reflection of Congress's strong and But Congress knew how to give rigorous judicata principles, it could have done so. And when it doesn't speak to that, don't we apply the canon in interpreting the As a general proposition yes, your honor, but again courts across the board have recognized including the second circuit, the third circuit Or the third circuit Duval said it applies, right? Actually in Duval, the court said it generally applies, but the question in Duval was, how does it apply? And it sort of skirted the issue because it said, well we don't really need to make an ultimate determination on that point here but in the context of discussing that the third circuit nevertheless recognized that while race judicata and other conclusive doctrines may generally apply to administrative proceedings where there's been an express statement by Congress such as this interest that it has in expeditiously removing criminal non-citizens particularly aggravated felons as expeditiously as possible that that could be one of those policy exceptions for which race judicata or other conclusive doctrines matter, but it didn't ultimately decide that. So the DHS, could you bring a claim against an immigrant, lose add facts, bring it again lose, add facts, bring it again lose until you win? No, your honor, because I think that's what the Fifth Amendment due process rights were protected against. In other words, if the agency were to be abusing its process by bringing successive litigation over and over and over And why isn't this, I mean they're complaining about due process, why isn't this successive litigation? I think this, in this case the circumstances of the state of Massachusetts hardly demonstrates that there was any sort of due process violation because there were only two successful litigations, the initial 2015 proceedings followed by the 2016 The 2016 proceedings were initiated literally within three to five days after the completion of the first set of proceedings and during the course of both the 2015 and the 2000 proceedings Mr. Yasser was provided all the process he was due, he could have presented any evidence in his defense he could have hired counsel to better advocate for his position in fact he, there's no indication that the agency curtailed those due process rights in any manner during the course of either of those proceedings And so, just so I understand it, the agency's argument is we should look to the purpose of the statute not the language, and determine whether race due to conduct applies. That's correct, that it's permitted to do so, Your Honor and with respect to some of the language that's within the actual provisions that address the procedures that take place during the renewal hearing itself for instance the regulations at 1003.30 is a good example of an indication of why race due to conduct should not apply in this situation. So for instance, the regulations there indicate that the agents, or the DHS may at any time in the course of proceedings add or substitute charges but that's a permissive language it doesn't say the agency must do so or shall do so That only governs what happens during the proceeding, not after it. That's correct, Your Honor. In other words, there's nothing and in fact, I believe it was Fair Ticket that recognized nothing within the language of the INA excludes provides any reason that race due to conduct should always apply or that there are But that's turning the maxim on its head Right? That's turning the presumption of race due to conduct, the common law turning the presumption on its head Well, I don't believe that it is Your Honor, because yes, it's saying there's nothing in there, within the immigration statute with respect to the specificity of when or how race due to conduct or other preclusive actions should be applied So therefore, what's important is to say well, as a general rule, as we have recognized in both administrative and judicial proceedings, we may assume that it may be applied but that it's important to take a look at the circumstances of the case to see whether there are prevailing or counterbalancing interests including the express congressional intent to get rid of or otherwise expeditiously remove aggravated felony offenders as a counterbalance to when race due to conduct should not apply to preclude these proceedings from moving forward Let me ask you about whether or not this first order was with prejudice or not. What's the government's position on that? Well, the record clearly indicates that the immigration judge, over the course, I believe it's on pages 133 to 136 of the record, that the termination of the 2015 proceedings was without prejudice and the DHS counsel before the immigration judge clearly asked, so is this with prejudice, judge, and the judge the immigration judge clearly responds, no a little bit later, I believe, closer to page 133. Can a judge just say something's without prejudice and that's what it is? Or what if it's functionally with prejudice or he doesn't have the authority to do it but he mouths the words that Mr. Vanderport said? I'm not sure it's unclear here whether the judge didn't have authority to be able to issue a decision without prejudice but for purposes of the court's in the board's decision, which is what is at issue here in the petition for review, the board did assume that the 2015 termination was final for purposes of its decision. But we're ultimately reviewing what the immigration judge did, right? No, we're ultimately reviewing what the board did. Well, you review both, right? So if we see the board's just assuming arguendo and put number three, right? Correct. And so, but below it's without prejudice. So our question is what is the effect of without prejudice? Is it the agency's position that without prejudice is without prejudice? Because what you're effectively saying is if you decide it's unclear from the record you have to remand, but your opponent says, well wait a minute, no you don't because without prejudice the judge can't do it that way and he cites this matter of SOG. So what's the agency's position on this? I think the, I think what the government would assert to the court is because yes, an issue is the board's decision and to the extent the board's decision adopted the IJ's decision, the immigration judge's decision, those are the, that's the scope of the issues that are before the court. Yes there was some litigation before the board in the initiative proceedings with respect to the finality of the 2015 termination but once it, once the board's decision issued, assuming finality, without deciding, but assuming finality for purposes of the instant decision, neither party briefed the finality issue on that point. In other words, neither party addressed  had the authority to do so. I understand, imagine, ignore the board for a second. What does it mean when the immigration judge says it's without prejudice? Is it without prejudice? Do we look behind that? How does this attorney general advisory affect? Do you have an answer to that or do you want us, if we find race judicata applies, are you just saying you have to remand and let the agency do it? No, I think even if you were to, even if the court here were to say or hold that race judicata may apply here or within the circumstances that occurred in this case, I think there's nevertheless a question to then answer, well yes, race judicata may normally apply in this circumstance, but given the countervailing interest of Congress, that has expressly stated that... Say we reject that. Say we say claim preclusion applies. Issue preclusion applies. What happens? Is this a final decision on the merits? Can we decide that question or is your position we have to remand it to the agency because the BIA assumed without deciding? Well, I think the board, in addition to the finality of issuing one of the elements of race judicata also determined that there was not the same cause of action underlying the 2015 proceedings and the 2016 proceedings. Alright, I understand that. I understand that argument. It's in the briefs. I want my question answered. I'm asking just about finality. Is without prejudice with or without finality? I think if you say without prejudice, it would be without finality. So what is the effect of the immigration judge saying without prejudice? Because your opponent takes the position that an immigration judge is not authorized to do without following very specific regulations. What's your position on that? I don't want to assert a position that wasn't briefed, but if I had to take a position here today with the understanding that we could certainly follow up with additional authority and supplemental briefing to the court, I think the immigration judge's statement that this is without prejudice would indicate that there wasn't finality to the 2015 termination of proceedings. In other words, that would exempt that decision from the application of race judicata. That being said, to the extent Petitioner's Council is raising arguments that there is a statutory or regulatory limitation as to what the immigration judge's authority may be on that specific point, the government would be happy to provide additional briefing on that point to the court since that wasn't an issue either before the board or before this court. Do you agree that there are statutory and regulatory restrictions on immigration judge's ability to say something is final or not final? If the question is are there certain statutory provisions or regulatory provisions, or perhaps in case law that may limit what the authority of an immigration judge may do or what the significance of his or her decision may be, I believe there probably are, Your Honor. But with respect to the specific question of does that limit the authority of an immigration judge to be able to say this decision I am rendering today is without prejudice and so therefore there's no finality to this decision, that's not a question that I can definitively answer for the court since it wasn't before either the agency or the court. Thank you, Counsel. Do you have anything else you want to add before you sit down? No, Your Honor. Just that because under, pursuant to the recognized long-standing principles under Vermont Yankee as well as the language of Astoria which clearly indicates that res judicata should be applied both flexibly and with the intention of Congress in mind when deciding when those doctrines are applied we would ask that the courts deny the petition for review and uphold the board's decision not to apply res judicata in this case. Thank you. Good afternoon, Your Honors. I may please the Court's echo on behalf of Petitioner Yasso. Right out of the gate I'd like to address the full site for you, Your Honor. It's a matter of SOG and FDB 27 INN INN Say it again. Matter of SOG INN INN I as in IMAC N as in Nancy Decision 462 That's AG 2018 Thank you. And, Your Honor, we would be happy to submit a 28-J letter after hearing today. Great. That would be fantastic. I'd like to address three points on rebuttal. First, Judge, to the bar to your question about fairness to immigrants who don't have documents. Both sides have a safety valve option here. Both sides have the option of filing a motion to revoke that. Didn't the Governor internally argue that the Sixth Circuit effectively eviscerated that by requiring them to come through because they shouldn't have to because it is that seems to me to be their rules and procedures entitled to Vermont anti-deference. The motion is to reopen, so don't they say that's been taken away from them by the Sixth Circuit? They say that, but that's not the case, Your Honor. The motion to reopen has not been taken away because the motion to reopen still exists. The same standards apply. The same threshold must be met to reopen. Would they have been successful here? I'm sorry to interrupt you, but could they have been successful here if they brought a motion to reopen? Could they still? Probably not, Your Honor. That's a good answer. Thank you. I mean, they probably have time issues with doing this, but I'm just curious whether a motion to reopen you're saying, well, this is a mechanism by which they could have died. Could they have in this case? Not in this case, Your Honor. But more broadly, a couple more points on Revolta. Government Council mentioned that the Fifth Amendment would protect against serial litigation in other cases. This is that case. Is it, though? What I was talking about is there's a clear convincing evidence standard, and they could bring some facts, lose, bring more facts, lose, and then eventually win. Whereas here, they were pursuing under one provision, the residual clause, and now they're pursuing under the crime of violence clause or whatever quarrels relates to. It seems to me this is different in kind than serial litigation, especially when you have the backdrop of what's going on with Johnson and DiMaio and Schuette and the case law changing as it goes. Your Honor, our position is that the Department had the ability to bring the aggravated felonies burglary theory throughout the pendency of these proceedings, even after the hearing before the IJ. I agree with that, but if they had a slam dunk, why do it? Why burn everyone's resources if they've got a slam dunk? If you've got way A to deport someone and it's a slam dunk, way B is difficult. Why should the government, who's spending the taxpayer's dollars, use way A? Our response, Your Honor, is that the Department, excuse me, the government is responsible for litigating this case as it chooses, and it makes certain choices in some circumstances, and it makes other choices in other circumstances. What choices it makes is to have the discretion, but at the end of the day, if these proceedings that we are having before the agency are to be legitimate, they have to be final and have force of law, and if you take res judicata away without, then you have no limit. There simply is not a limit on the government's ability to bring additional charges. If the immigrant loses, and so you say res judicata, and then the law subsequently changes in the immigrant's favor, and say it's after the period to open a motion to reopen, should they be able to come back to court? That's a good hypothetical. I'm not sure I'm prepared to answer it, but the  it, what would be the determining factor here is we have serious interests at stake on the government side, we have the interest in removing individuals who have been convicted of a crime that rises to a level of seriousness that is an aggravated felony, and on the other hand we have lawful permanent residents who the Supreme Court has said are entitled or protected by the Fifth Amendment who are entitled to their day in court to argue that they should not have to be subject to this banishment and exile, and so when you're establishing a system, it is important to balance those two and have one vehicle, one proceeding where we are going to litigate removability. Without if you're, just to back up one second, the government also points to expedited removal proceedings. Ms. Rialso was not in expedited removal proceedings as a lawful permanent resident. That cannot be evidence that we should not have res judicata here because he's not even in those proceedings, and that matters because Congress expressly decided not to have expedited removal here. It decided to have process incorporating common law. Now that some of your time is up, is there anything you want to say in conclusion or is that Just in conclusion, your honors, in any adjudicatory system with adversarial proceedings, there must be some limit on the government's power to bring charge after charge after charge. Without a limit, without res judicata, the government is essentially inviting lawful permanent residents to proceedings that are a sham because the restriction, it can wash charge after charge after charge. Thank you, your honors. Thank you, counsel, and I want to thank the University of Minnesota Immigration Clinic. The court truly appreciates your dedication and your time in this matter and flying out here and arguing this case. The students, as always, did a phenomenal job and we appreciate it. It's an honor, your honors. Thank you.